**LYNES v. LEHNHARD.**

Patent Appeal No. 5045.

Court of Customs and Patent Appeals.

June 25, 1945

Lester B. Clark, of Houston, Tex., for appellant.

Allen R. Whittington, of Detroit, Mich. (George A. Degnan, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding Lehnhard priority upon the four counts (numbered 1, 2, 3, and 4) involved in an interference proceeding. The subject matter of the invention is described in the decision of the Board as follows: "The subject matter of this interference relates to a treating tool for wells whereby a specified increment of a well bore may be treated with liquid under pressure. The tool includes a body and a pair of spaced expansible packers mounted thereon. A discharge section is located between the packers and an operating pipe is provided to manipulate the tool and to supply liquid under pressure to the discharge section. Valves are so arranged that the pressure liquid will first inflate the packers and thereafter discharge from the tool. In order to deflate the packers a valve, operable by the pipe, may divert the liquid into the well bore above the packers. In the Lynes construction this last-mentioned valve functions by longitudinal movement of the pipe, whereas in the Lehnhard device it operates by rotary movement of the pipe."

Counts 2 and 3 read as follows:

"2. A treating tool for wells including a body, a pair of spaced packers thereon, a discharge section between said packers, an operating pipe to manipulate said tool and to supply liquid under pressure to be discharged into the well from said section, means operable so that the pressure liquid will first inflate said packers and thereafter discharge from the tool, and additional means operable by said pipe while said packers are set to divert the liquid into the bore above the tool.

"3. A tool to apply liquid under pressure to an increment of a well bore including a body, a pair of spaced packers thereon, an operating pipe through which liquid under pressure is supplied to said tool, means to first direct the liquid to inflate said packers and to thereafter effect discharge of the liquid between the packers into the well bore.

As stated by the Board: "Count 1 differs from count 2 in omitting the last means of count 2. Count 4 is identical with count 3, but includes as an additional means the last element specified in count 2, in somewhat different language."

The counts originated in a patent No. 2,227,730 for "Inflated Packer Treating Tool for Wells" issued to Lynes January 7, 1941, upon an application filed October 13, 1939. The patent includes a number of claims not involved in the interference. Those involved were copied on April 28, 1941, by Lehnhard into his application for patent for "Well Packer," serial No. 285,759, filed July 21, 1939. So, upon the record, Lehnhard is the senior party, and the burden rested upon Lynes to establish priority by a preponderance of the evidence.

Lehnhard took no testimony and is restricted to the filing date of his application (July 21, 1939) for all elements essential to the establishment of priority.

In his preliminary statement Lynes made no claim of reduction to practice other than the constructive reduction resulting from the filing of his application but, upon the matter of conception, claimed first drawings and disclosure to others on August 15, 1937 (also alleging "the beginning of the actual exercise of reasonable diligence" on that date), and took testimony in the effort to substantiate such claims.

However, prior to the taking of any testimony, the party Lynes, within the motion period, moved to dissolve the interference, alleging (so far as here pertinent):

"(1) That the party Lehnhard has no right to make any of the claims constituting the counts in the issue of this interference because the apparatus disclosed in the Lehnhard application, as filed, did not include as an element thereof a means to

inflate and thereafter effect discharge of fluid from the tool.

"(2) That the party Lehnhard has no right to make any of the claims constituting the counts in issue in this interference because the claims are directed to new matter injected into the application subsequent to the filing thereof."

In his decision upon the motion the Examiner described the invention in a general way, quoted claim 1, and stated: "The briefs for the parties Lynes and Lehnhard have been carefully considered and the examiner is in agreement with the facts set forth in the brief of the party Lehnhard. The motion to dissolve is accordingly denied."

The brief of Lehnhard so referred to is not embraced in the record certified to us. Therefore, we have no information respecting the reasons for the Examiner's view, except as they may be reflected in the decision of the Board before which the issue was carried in conformity with Patent Office rule 130. It is brought before us in the reasons of appeal.

Before us the party Lynes has alleged errors on the part of the board set forth in thirty-one separate reasons of appeal which are discussed in detail in his brief. However, only two fundamental issues are presented.

The first is the right of the party Lehnhard to make the counts. This embraces the question of whether they are supported by his application as originally filed.

The second is whether the party Lynes established conception prior to Lehnhard's filing date of July 21, 1939.

It is conceded that, in his application as originally filed, Lehnhard had no claims which covered the particular subject matter of the counts, and that it did not include a drawing showing structure conforming thereto, but the specification as filed contained the following statement: "If desired, two or more hydraulic packers may be used in combination wherein it is desired to seal the well bore both above and below the point of introduction of the fluid agent. In such cases, the back pressure valve assembly or other similar means controlling the expansion of the packing elements is positioned between the packers in such a manner as to allow fluid entry from the tubing into the well bore at any desired point between the packers."

It will be borne in mind that the claims which became the counts were copied into the Lehnhard application April 28, 1941, which was less than four months after the issuance of the patent to Lynes, the above quoted statement from the specification together with other recitals being relied upon for disclosure. The Primary Examiner held the claims allowable, and in an office letter under date of June 14, 1941, stated: "It is required that an additional figure be added to the drawings, showing the modification described on page 7 [the above statement], lines 19 to 26, and including the two packers and a back pressure valve assembly positioned between the packers, all as described on page 7."

The drawing so required appears to have been presented on June 27, 1941, and with it an amendment amplifying the specification in connection therewith. The interference was declared July 23, 1941.

From the foregoing it is clear that the drawing was introduced by the examiner's requirement. It is not so clear that he required the amendment to the specification, and in his motion to dissolve Lynes alleged that the amendment constituted new matter, and contended, in substance, that Lehnhard is not entitled to relate such matter back to the original filing date of his application.

With respect to that contention, it is sufficient to say that the Board did not predicate its holding relative to Lehnhard's right to make the counts upon the matter introduced by amendment, but rested it upon statements which appeared in the application as originally filed, the above quoted statement being the primary basis of the finding.

We quote the following from the Board's decision:

"The foregoing description of a treating tool provided with a pair of packers is deemed to be sufficient to teach one skilled in the art the manner of constructing a well treating tool corresponding to the interference counts. There is a disclosure that a pair of packers should be positioned on the tubing with a back pressure valve located between the packers. In order to follow such a disclosure nothing more is necessary than to duplicate the packer shown in the drawings. The Lehnhard application as filed contains an adequate description of the subject matter in issue.

"The party Lynes argues that 'Lehnhard gave only the most meagre and suggestive disclosure for the use of such two packers' * * *. It may well be that the Lehnhard description is brief, but there is no lack of any essential information, for the relative location of the two packers and the back pressure value is clearly described and the form of these elements is clearly shown in the drawings.

"The party Lynes also points out that the Lehnhard application as filed did not include claims to a structure comprising a pair of spaced packers, nor did it include a drawing showing such a structure. There is no question of laches on the part of the party Lehnhard, for the claims of the Lynes patent were copied by the party Lehnhard within four months of the date of the Lynes patent. The alleged failure of the party Lehnhard to claim the subject matter in issue in his application as filed is therefore of no consequence if the subject matter is sufficiently disclosed therein. Nor is a drawing essential to the right to make an interference count if the subject matter thereof is adequately described in the specification. Goldsmith v. von Mihaly, 24 C.C.P.A. [Patents] 1239, 1937 C.D. 633, 485 O.G. 274, 90 F.2d 359, 33 U.S.P.Q. 584. The party Lynes apparently suggests these circumstances, as well as the fact that an interference was not declared before the Lynes patent was granted, as evidence that the Lehnhard application, as filed, does not disclose the subject matter of this interference. Such matters are merely circumstantial and are not controlling where the application expressly describes a structure meeting all the limitations of the interference counts."

Before us it is contended by Lynes that the board erred in holding that "The Lehnhard application as filed contains an adequate description of the subject matter in issue," and particular emphasis is placed upon the limitation reading (we quote from count 2, supra), "means operable so that the pressure liquid will first inflate said packers and thereafter discharge from the tool." This limitation appears in substance in all the counts, and, in the final analysis, the question of whether the disclosure of Lehnhard's application as originally filed supports this particular limitation constitutes the only issue actually before us upon the phase of the controversy now being discussed.

It seems to us that the quoted statement, of itself, is sufficient to disclose to those skilled in the art the limitation in question. The packers are specifically described as being "hydraulic," which means that they convey liquid, and the amount of expansion or inflation is controlled by a "pressure valve or other similar means." It would seem obvious that, after the operation is completed by the pressure of the liquid between the packers against the surface of the well bore, such liquid as is in the packers themselves is released and discharged from the tool.

However, while the above quoted statement from the Lehnhard specification is the only one discussed in detail by the Board, there are additional disclosures in his application as filed which seem to us to be pertinent here.

In the brief on behalf of Lehnhard before us a comparison is made, element by element, between count 2, supra, and statements of the original specification. In connection with the element, or limitation, now under discussion reading (for convenience we repeat it), "means operable so that the pressure liquid will first inflate said packers and thereafter discharge from the tool," attention is directed to the following appearing in the specification: " * * * With the lugs 9 engaging the J-slots 10 in sleeve 11 so that fluid is prevented from escaping through ports 12, the packing device, assembled as shown, is lowered into the well to the point where it is desired to segregate one portion of the well bore from another during the introduction of the fluid treating agent. The fluid treating agent is then started into the well through the tubing, and, as pressure is applied to force the fluid from the tubing through the packer against the pressure exerted by the spring loaded valve, the packing element is caused to dilate and seat at a pressure which is equivalent to the pressure required to depress the spring loaded valve. As the introduction of fluid is continued under application of sufficient pressure, the valve 20 opens and allows the fluid to escape through the ports 17 into the well bore."

The foregoing, of course, described a device having a single packer but, as the Board aptly said, in substance, nothing more is necessary than to duplicate the packer shown in the drawings in order to

follow the disclosure of a tool having a pair of packers.

Counsel for Lynes has urged with much earnestness that since the counts originated in his patent they should be interpreted in the light of his specification and description thereof.

■ This argument has been studied with care and respectfully considered. We find nothing ambiguous in the counts which would justify a departure from the long-established and well-known rule that the counts of an interference must be given the broadest interpretation of which they reasonably will admit. The two applications were copending and in this case, as has occurred in many cases, the patent was inadvertently issued.

In such cases the statute makes provision for the proceeding to be followed, and the Patent Office and the courts are bound thereby. That proceeding was followed here.

■ The Board correctly stated that under the state of facts here appearing it was not essential that Lehnhard should have had claims in his application as filed covering the subject matter, or that in order to make the counts such application should have contained a drawing depicting the device. It was sufficient if the specification disclosed it, and we agree with the Board that it did so, and that Lehnhard, therefore, has the right to make the counts.

■ Turning to the other general issue involved—that of priority—it may be repeated that Lynes in his preliminary statement made no claim of any actual reduction to practice, but relied upon the constructive reduction resulting from the filing of his application on October 13, 1939.

He claims conception on the specific date of August 15, 1937, asserting that on that date he made first drawings, written description and disclosure to others. Also, he alleged the beginning of the exercise of reasonable diligence on that date.

In its decision the Board very carefully reviewed the evidence relating to conception and concluded therefrom that "The party Lynes * * * has failed to prove, by properly corroborated testimony, that he was first to conceive the invention in issue," and, since he was the last of the two parties to reduce the invention to practice, awarded priority to Lehnhard, it being unnecessary to discuss the question of dili-gence in the absence of a finding of conception.

Lynes introduced in evidence two sketches, marked, respectively, Exhibits 1 and 2, in both of which he insisted below, and here insists, the invention is disclosed, Exhibit 1 being particularly emphasized.

The drawing appearing on Exhibit 1 is a pencil sketch which, as correctly described by the Board, "* * * shows a testing tool including two inflatable packers and a fluid operated piston to withdraw a sample from that portion of the well bore between the packers. At the lower end of the piston chamber is a ball valve and at the upper limit of the piston is a 'Packer Deflation Plunger.'"

Below the sketch is the following type-written statement: "First drawing made by John Lynes on August—15,—1937,—in his room at the Texas State Hotel, Houston, Texas, of an assembly for testing formations in a well here, the assembly consists of an outer and inner tube, the inner tube slidable. Also ball and seat valve and swabbing piston, one or more hydraulically inflated packers fixed to the outer tube, a port for testing. If testing is at bottom of well only one packer would be required, at a high elevation two or more packers would be used. It is possible to pump fluid into the formation isolated between the packers by removing the ball valve and swabbing piston. I certify the above was dictated by me and that the drawing was made by me on August—15,—1937."

The statement is signed by Lynes and witnessed by his wife, who typed it. Three other statements appear on the exhibit. One signed by J. K. Robertson reads: "John Lynes explained the purpose & use of this drawing in April 1938."

Another signed by J. C. Koetting reads: "This is drawing of Testing Tool shown and explained to me by John Lynes in July 1938."

The third signed by James Armitage reads: "On July 29th 1939 in the Texas State Hotel, Houston Texas John Lynes explained his invention & showed me this drawing. Employing me at that time as his Engineer to assist in the development of the invention."

It will be observed that the statements of Lynes and that of Koetting are to the effect that the device depicted by the drawing is a *testing* tool.

In the introductory clauses of counts 1 and 2 the invention at issue is referred to as a *treating tool*, and, while the word "treating" is not used in counts 3 and 4, the structure is so described as to show that the device is a treating tool.

As we understand it, the distinction between a testing tool and a treating tool is that the testing device is lowered into the well bore, which passes through various kinds .of physical formations, for the purpose of determining, or testing, the sloughing qualities of the surfaces of the bore, while the function of the treating tool is to apply liquid by heavy pressure to stop or prevent sloughing at the place where the test shows such to be necessary.

With reference to the per se showing of Exhibit 1, the Board said, inter alia: " * * * it is to be noted that Lynes Exhibit 1 does not disclose on the face of it a complete and operative tool as required by the interference counts. The mere removal of the ball valve and swabbing piston, as suggested in the typewritten matter, would not result in a satisfactory treating tool, for there would then be lacking suitable mechanism for deflating the packers, essential to permit removal of the treating tool. Lynes himself testified that certain ports shown in the sketch would have to be closed * * *. Lynes also indicated that a foot valve might be necessary * * *. It is considerèd clear that Lynes Exhibit 1, standing alone, does not disclose a complete and operative mechanism meeting the terms of the interference count but must be supplemented by oral or other explanation."

It is very earnestly insisted by counsel for Lynes that Exhibit 1 of itself is sufficient to establish conception, it being stressed that none of the four counts "call for any mechanism for deflating the packers." While this is true in a literal sense, we are unable to discern how a device could be operative within the meaning of the counts if it did not have such mechanism. It will be observed that the Board's holding was that Exhibit 1 does not disclose on its face a *complete and operative* device usable as a *treating* tool.

In the brief on behalf of Lehnhard attention is directed to certain specific elements required by the counts which are not shown in Exhibit 1. Counts 1 and 2 require "a discharge section between said packers," and "means operable so that the pressure liquid will first inflate said packers and thereafter discharge from the tool." Counts 3 and 4 require "means to first direct the liquid to inflate said packers and to thereafter effect discharge of the liquid between the packers into the well bore." Count 2 also calls for "additional means operable by said pipe while said packers are set to divert the liquid into the bore above the tool," and count 4 for a somewhat similar arrangement. We are unable to find these elements defined in Exhibit 1.

It may be that Exhibit 1, standing alone, is sufficient to show conception of a testing tool, but the elements mentioned evidently are vitally essential in a treating tool such as the counts describe, and we are unable to agree that the exhibit, of itself, makes a disclosure which would enable those skilled in the art to construct a device conforming to the counts.

Those called as corroborating witnesses were Mrs. Lynes, Robertson, Koetting, and Armitage. Their testimony was fully analyzed in the decision of the Board, much of it being quoted literally, and no useful purpose would be served by an extensive review of it here.

With respect to the witness Armitage, it will be noted that in his statement appearing on the exhibit he recited that the explanation of the invention was made to him on July 29, 1939. This was subsequent to Lehnhard's filing date (July 21, 1939) and the witness was unable to testify to any conception on the part of Lynes prior to the latter date. His testimony, therefore, is of no value upon the matter of conception.

It is clear that Mrs. Lynes had no technical knowledge of the subject matter involved and she was unable to give any testimony of value in view of the fact that the drawing is not of itself sufficient to disclose the invention.

It appears that the witness Koetting is (or was at the time of testifying) manager of a bakery; that he "took" some interest in a "suspension spring seat" upon which Mr. Lynes was working; that early in 1938 he and Lynes "went into some oil deals"; that Lynes also "handled the purchase of some lands" for him, and that eventually he invested some money in the corporation which, as we understand it, was formed to exploit the invention here involved.

432

The following is a part of his testimony respecting Exhibit 1:

"Q. With that arrangement how would you go about releasing the packers? A. With that arrangement, this drawing does not show it, but there was developed a shear pin which would open up the ports above and release your pressure.

"Q. Did Mr. Lynes explain that to you in July, 1938? A. I do not recall that he explained it on that date.

"Q. Did you understand that it would work that way? A. I understood of course we would have to develop, we would have to engineer a process for releasing that pres[s]ure. That is a detail that would have to be worked out."

After quoting the above, the Board commented: "This testimony from a man who invested money in Lynes' idea and who now has stock in the corporation that has been formed * * * is very persuasive that as of July, 1938 Lynes did not have a complete conception of an operative tool meeting the requirements of the interference counts. Koetting's testimony as to the verbal disclosure by Lynes * * * does not indicate that Lynes had a complete conception of an operative mechanism prior to the senior party's filing date. There is likewise no testimony by Koetting which would indicate that the essential packer release elements were developed by Lynes prior to Lehnhard's filing date."

The testimony of the witness Robertson was also lacking in corroborative effect upon essential points. Much of it was quoted in the Board's decision, and it is unnecessary to detail it here.

With respect to Lynes Exhibit 2 (which is a sketch, apparently made in October 1938, generally similar to Exhibit 1) the brief on behalf of Lynes before us states: "It was never Lynes' intention, nor does the record so reflect, that conception of the invention would be established by Lynes' Exhibit 2. Lynes submitted his Exhibit 2 solely for the purpose of showing that he was working on the invention, that he was attempting to supplement his previous work and Exhibit 2 serves his purpose because it illustrates that Lynes was attempting to solve the problem of affixing packers to the supporting structure so that they might be inflated."

In view of this statement no consideration of Exhibit 2, nor of the testimony relating to it, is required on the question of conception.

We are in agreement with the Board's conclusion that Lynes failed to establish conception of the invention defined in the counts prior to Lehnhard's filing date.

Certain of Lynes' reasons of appeal appear to raise a question of originality, based upon conversations in March, 1940, between Lynes and Lehnhard and some of the latter's associates during which a drawing of Lynes was shown to Lehnhard with some explanation of it. Lehnhard and Lynes, seemingly, met each other for the first time on March 4, 1940.

As pointed out by the Board, this meeting took place subsequent to the filing dates of both applications, and we fail to see how any question of originality or derivation can arise under such circumstances, it being held that Lehnhard fully disclosed the subject matter in his application as originally filed on July 21, 1939.

The decision of the Board is affirmed.

Affirmed.